UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:04-CR-28 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| FRANCES SEIBER, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M**

On July 8, 2005, the Court held the sentencing hearing of Defendant Frances Seiber ("Defendant"). The Court arrived at Defendant's sentence after taking into account her personal circumstances and background as well as the purposes of federal sentencing as stated by Congress in 18 U.S.C. § 3553(a), and determined a sentence outside of the United States Sentencing Guidelines ("Guidelines") was appropriate. At the time the Court imposed the sentence of five years' probation, it stated it would issue a written memorandum stating the reasons for the non-Guidelines sentence. This is that written memorandum, issued in conjunction with the judgment.

**I.     FACTUAL BACKGROUND**

**A.     Facts of Defendant's Conviction**

Defendant is the widow of Walter Seiber, a military veteran who was prescribed Oxycontin by a physician with the Veteran's Administration Medical Center in Murfreesboro, Tennessee. When Walter Seiber died on July 22, 2003, Defendant failed to disclose the death to the Veterans

1

Health Administration but continued to fill the Oxycontin prescription until March 15, 2004, when the Veterans Health Administration discovered Mr. Seiber's death.

Defendant sold the Oxycontin to a confidential informant for the Tullahoma, Tennessee Police Department. Documented sales to this informant took place in October and November, 2003. Records from the Veterans Health Administration show Defendant fraudulently obtained 6,670 five millligram tablets and 3000 eighty milligram tablets of Oxycontin following the death of Walter Seiber.

### B. Defendant's Personal History and Background

Defendant is a sixty-nine-year-old, wheelchair-bound woman who has serious health problems, supported by medical records Defendant submitted and the agreed facts presented at the sentencing hearing.

Defendant was born on August 2, 1935 in Bladen County, North Carolina. She has five children, seventeen grandchildren and eleven great-grandchildren. She is five feet, six inches tall and weighs approximately 240 pounds. She suffers from degenerative disc disease with stenosis. With the exception of a few steps at a time when she can stand and walk with the assistance of a cane or walker, she is wheelchair bound. According to her medical reports, surgery is necessary to correct the condition so Defendant can walk again. However, this surgery cannot be performed due to her other medical conditions which include chronic pulmonary disease (COPD) and congestive heart failure. Recently, Defendant has also suffered two small strokes. Her COPD requires the use of oxygen to aid her breathing.

When the probation officer spoke to Defendant on June 8, 2005, Defendant stated she had been hospitalized recently but could not recall exactly when. She also was struggling with

bronchitis which caused her a great deal of difficulty speaking and breathing. Pretrial Serices confirmed Defendant's medical condition is serious and she has been hospitalized due to the strokes and degenerative disc disease since the entry of her guilty plea. The state of Defendant's health is expected to deteriorate. She can be left alone for short periods of time but requires daily care including home health care services. Defendant lives with her grandson who participates in her care. Her prescription medications include Prednisone, Advair, Altace, Combivent, Darvocet, Napsylate, nitroglycerin patch, Plavix, Prevacit, Prilosec and Tussinex.

Defendant does have a prior criminal history which reflects upon her character. In 1969, at age 33, she was convicted in Norfolk, Virginia of four counts of uttering. In 1993, at age 58, in Bladen County, North Carolina, she was convicted of two counts of felony larceny. And in 1999, at age 64, she was convicted of shoplifting from a Wal-Mart in Bladen County, North Carolina.

In addition to the above three convictions, Defendant has been arrested on five other occasions on fraud and theft charges. These arrests occurred from 1966 through 1982. As of the time the PSR was written, Defendant's records reflected four pending charges, all related to fraud or theft.

Defendant has been on bond since her arrest and under the supervision of Pretrial Services. She had complied with all the conditions of her release and has presented no problems to Pretrial Services.

## II. PROCEDURAL BACKGROUND

On March 3, 2005, Defendant entered a guilty plea to each count of a three-count indictment charging her with distribution of Oxycodone (Oxycontin), a Schedule II controlled substance, in

3

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). There was no plea agreement between Defendant and the Government.

Following her guilty plea the Probation Office completed a PSR, applying the Guidelines to Defendant's case. The PSR assigned Defendant a total offense level of 29 and a criminal history category of II. With that offense level and criminal history score, the Guidelines provide an imprisonment range of 97 to 121 months. There is no statutory mandatory minimum sentence.

### III.   DISCUSSION

Since the United States Supreme Court's decision in *United States v. Booker,* 543 U.S. ____, 125 S.Ct. 738 (2005), district judges are afforded considerably more discretion in determining the sentence of a criminal defendant. In *Booker*, the Supreme Court made the Guidelines advisory by excising 18 U.S.C. § 3553(b), the provision of the Sentencing Reform Act that made the Guidelines mandatory. 125 S. Ct. at 764-68. However, the Supreme Court also held "the district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 767. Now, sentencing judges must determine the sentence by application of the factors set forth 18 U.S.C. § 3553(a) but must also give consideration to the Guidelines (including the Guidelines sentencing range). *Id.* at 756, 764.

Congress has provided sentencing judges a list of goals or factors judges must consider in imposing a sentence. Section 3553(a) contains a "parsimony" provision that commands sentencing judges to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a).

This Court, in *United States v. Phelps*, 366 F.Supp. 2d 580 (E.D. Tenn. 2005), set out its

4

methodology for arriving at a sentence following *Booker*. The steps described in *Phelps* will be followed here.

First, the Court will apply the relevant Guidelines provisions. This includes calculating the advisory Guidelines range and applying established departure law and procedures. The Court also will consider the collective judgments of the Sentencing Commission and Congress reflected by the resulting Guidelines range.

The Court next will look to the sentencing purposes Congress requires it to consider, listed in § 3553(a)(2):

> [T]he need for the sentence imposed–
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Section 3553(a) further directs courts to consider: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (ii) "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6); and (iv) "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7).

Finally, the Court will determine a reasonable sentence in accordance with §3553(a), including but not limited to considering the relevant Guidelines range. *See Booker*, 125 S. Ct. at 767.

### A. Defendant's Request for Downward Departure Under the Guidelines

In determining the relevant Guidelines range, the Court must rule on Defendant's motion for a downward departure from the Guidelines imprisonment range as calculated in the PSR, 97 to 121 months, to a sentence of home confinement (Court File No. 18). The PSR indicates because of Defendant's ill health, a departure under the Guidelines may be appropriate. While section 5H1.4 of the Guidelines indicates that physical condition is not ordinarily relevant in determining whether a departure may be warranted, an extraordinary physical impairment may be a reason to depart downward, such as in the case of a seriously infirm defendant where home detention may be as efficient and less costly than, imprisonment.

However, the caselaw interpreting this provision requires the Court to determine the Bureau of Prisons is unable to accommodate a defendant and provide her with adequate treatment. *See United States v. Bostic*, 371 F.3d 865, 869-70 (6th Cir. 2004); *United States v. Tocco,* 200 F.3d 401, 434 (6th Cir. 2000); *United States v. Johnson*, 71 F.3d 539, 544-45 (6th Cir. 1995), cert. denied, 517 U.S. 1113, 134 L. Ed. 2d 488, 116 S. Ct. 1338 (1996). The record is silent on this point but the Court presumes the Bureau of Prisons would be able to meet some if not all of Defendant's needs. Thus, a downward departure under the Guidelines is not appropriate in this case.

Moreover, the Court does not believe a downward departure to home confinement is a reasonable alternative to a sentence of imprisonment. Due to the number of Defendant's health conditions, and the frequency with which she must make both scheduled and emergency doctor's visits, the Court concludes home detention with electronic monitoring is not a feasible sentence for Defendant. In order to reduce Defendant's Guidelines range to permit a more workable sentence of probation, the Court would have to depart 24 offense levels, from an offense level of 29 to an

6

offense level of five. The Court is extremely hesitant to set a precedent by making such a large departure in this case. Because a downward departure is inappropriate here, the applicable Guidelines range remains 97 to 121 months imprisonment.

## IV. NON-GUIDELINES SENTENCE IS WARRANTED

Since the Court has determined a departure under the Guidelines is not encouraged in cases such as this and if the Court did depart, it would have to make a substantial departure, the Court then turns to the other factors listed in § 3553(a) in fashioning an appropriate sentence. The Court concludes a probationary sentence in this case is most appropriate and adequately reflects the factors in § 3553(a). The case law in this circuit requires the sentencing court to explain its reasons for the sentence imposed. *United States v. Briceno*, 2005 WL 1513101 (6th Cir. June 22, 2005) (unpublished) (district court must engage in meaningful analysis to enable appellate court to conduct reasonableness review). Given the nature and circumstances of this offense, for the following reasons, the Court concludes a probationary sentence is appropriate under § 3553(a).

The Court has considered Defendant's history and characteristics, and whether a probationary sentence reflects the seriousness of her offense, promotes respect for the law, and provides just punishment for her offense. *See* 18 U.S.C. §§ 3553(a)(1), (2). Defendant had the opportunity to commit this offense solely due to the circumstances of her late husband's serious end-of-life illness and death. Further, Defendant, being wheelchair-bound, is practically incapacitated from further criminal narcotics sales. The Court concludes that a probationary sentence, in light of opportunistic nature of offense and the Court's assessment that Defendant is unlikely to involve herself in this type of activity in the future, reflects the seriousness of his offense, promotes respect

7

for the law, and provides just punishment.

The Court must also consider whether the sentence affords adequate deterrence, protects the public, and provides Defendant with needed medical care or other correctional treatment. *See* 18 U.S.C. 3553(a)(2). The Court finds Defendant's medical condition has basically incapacitated her from further criminal activity, thus a probationary sentence provides adequate deterrence and protection for the public. This probationary sentence also will allow her to continue medical treatment for her serious health problems with her current physicians with whom she is established in North Carolina. The Court was informed at her sentencing hearing she has scheduled necessary surgery for her degenerative disc disease in the near future. This sentence will allow her to go forward with that surgery.

In light of these factors and the other sentencing goals in 18 U.S.C. § 3553(a), after considering the applicable Guidelines range, the Court declines to impose a sentence within the range proscribed by the Guidelines. The Court concludes that a probationary sentence is a reasonable sentence and that, although it differs from the Guidelines, it will more effectively promote the sentencing goals outlined in 18 U.S.C. § 3553(a).

**ENTER:**

>     **/s/**
> **CURTIS L. COLLIER**
> **UNITED STATES DISTRICT JUDGE**